UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RYDELLE LEWIS,

                    Petitioner,

     -vs-                                    **No. 10-CV-0796(MAT)**
                                             **DECISION AND ORDER**

DAWSON BROWN, Superintendent of
Groveland Correctional Facility,

                    Respondent.
_____

## I.   Introduction

     Petitioner <u>pro se</u> Rydelle Lewis ("Lewis" or "Petitioner")
seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the
basis that he is being detained in state custody in violation of
his federal constitutional rights. Lewis's custody stems from a
judgment of conviction entered against him on July 31, 1979,
following a jury trial in New York Supreme Court (Erie County), on
charges of Murder in the Second Degree (New York Penal Law ("P.L.")
§ 125.25) and Manslaughter in the First Degree (P.L. § 125.20).
Petitioner was sentenced to an aggregate prison term of 20 years to
life, and his conviction was affirmed on direct appeal. <u>People v.
Lewis</u>, 105 A.D.2d 1079 (4th Dept. 1984), <u>lv. denied</u>, 64 N.Y.2d 782
(1986).

     On August 28, 2006, Petitioner was released to parole, but his
parole was revoked about a year later after he was found to have

violated certain conditions of release. The instant habeas petition challenges the propriety of Lewis' parole revocation proceeding.

## II.  Factual Background and Procedural History

### A.   The Parole Revocation Hearing

When he was released to parole, Lewis signed a form agreeing, inter alia, to refrain from behaving "in such a manner as to violate the provisions of any law . . . [or] threaten the safety or well-being of [himself] or others." Conditions of Parole, Rule 8, Respondent's Exhibit ("Resp't Ex.") B.

On August 21, 2007, at the Buffalo office of the New York State Division ("NYSDOP"), Petitioner caused a disturbance in the waiting room, refused to comply with the orders of two parole officers, assaulted Parole Officer Charles Sears, and resisted arrest. Later that day, the NYSDOP issued a parole violation warrant charging Lewis with violating Rule 8 of his parole release conditions by (1) causing a disturbance in the parole office's waiting room; (2) refusing to place his hands behind his back as ordered by Officers Sears; (3) resisting the attempts of several parole officers to arrest him; and (4) assaulting Officer Sears. At the direction of his senior officer, Officer Sears filed a criminal complaint against Petitioner in Buffalo City Court, charging him with resisting arrest, obstructing governmental administration in the second degree, disorderly conduct, and harassment in the second degree.

Petitioner waived a preliminary hearing, and after several adjournments, the final parole revocation hearing was held before an Administrative Law Judge ("ALJ") with the NYSDOP on October 16, 2007. Before the hearing commenced, Petitioner's counsel requested that the ALJ adjourn the hearing until after the resolution of the related criminal case. The ALJ denied the application, reasoning that dismissal of the criminal charges would not bar the NYSDOP from revoking Lewis's parole.

The hearing proceeded, at which several officers testified for the NYSDOP regarding the incident which occurred while Petitioner was in the waiting area of the Buffalo NYSDOP office. Officer Mata related that Petitioner had approached him, loudly complaining that he had been waiting to see his parole officer for "over three fucking hours." Resp't Ex. I at 8-10, 12, 38, 50. Officer Mata told Petitioner that he would be seen shortly and ordered him to sit down, but Petitioner refused. Resp't Ex. I at 10, 39, 50.

Officer Sears then entered the waiting room and, after observing Petitioner yelling at Officer Mata, also ordered Petitioner to sit down. Again Petitioner refused to do so. Resp't Ex. I at 10-11, 40, 50.

Officer Sears ordered Petitioner to go to the reporting area located in the back of the office, and attempted to guide him to the locked doorway which led out of the waiting room into a hallway. Resp't Ex. I at 11, 50. In response, Petitioner stormed

-3-

past Officer Sears, yelling that Sears was not "his fucking parole officer." Resp't Ex. E at 68-70.

When Officer Sears attempted to grab Petitioner's arm as they left the waiting room, Petitioner grabbed Officer Sears by the shirt collar and pushed him against a wall in the hallway. Resp't Ex. I at 50, 70-72. Upon hearing the scuffle, Officer Fuchs unlocked the door and entered the hallway to find Petitioner choking Officer Sears. Id. at 11. When Petitioner ignored Officer Fuchs's order to release Officer Sears, Officer Fuchs forced Petitioner to the ground, restrained him in handcuffs, and placed him in a holding room. Id. at 11, 50-51.

Lewis's sister, Velveeta Lewis, testified on his behalf as a character witness. Lewis did not take the stand.

On October 29, 2007, the ALJ issued a decision revoking Lewis's parole and recommending a time assessment of 24 months. On February 27, 2008, the criminal charges against Petitioner were dismissed, for reasons which are not contained in the record before the Court.

On April 21, 2009, the NYSDOP interviewed Petitioner and voted to hold him for an additional 24 months rather than re-release him to parole supervision.

**B.    The Administrative Appeal**

Both Petitioner and his assigned hearing counsel filed Notices of Appeal of the ALJ's decision and the time assessment. A new

attorney was assigned to represent Petitioner on the appeal, and she received an extension of time, to June 26, 2008, to perfect the appeal.  However, neither assigned counsel nor Lewis perfected the appeal. Consequently, it was automatically dismissed with prejudice when the deadline to perfect expired. See Tit. 9, N.Y. Comp. R. & Regs., § 8006.2(f).

    **C.   The State Habeas Corpus Proceedings**

 Lewis then pursued collateral relief in state court by filing two petitions for habeas corpus under N.Y. Civ. P. Law & R. § 7001 et seq., which were denied. The first was denied for failure to exhaust administrative remedies. See Resp't Ex. M.

In the second state habeas petition, filed on June 20, 2008, Lewis argued that (1) the parole revocation was improper because he was arrested by a parole officer prior to the issuance of an arrest warrant; (2) the ALJ did not adjourn the final parole revocation hearing until after the disposition of the criminal charges; and (3) there was insufficient evidence to sustain a parole violation. Deeming Lewis's administrative remedies to have been exhausted, Livingston County Supreme Court denied the petition on the merits. The Appellate Division, Fourth Department, of New York State Supreme Court ("the Fourth Department") unanimously affirmed the decision on April 30, 2010. People ex rel. Lewis v. Hunt, 72 A.D.3d 1630, 1631 (4th Dept. 2010). The Fourth Department held that the lower court did not err in summarily denying his petition seeking

a writ of habeas corpus for, it  possessed the authority to deny the petition pursuant to N.Y. Civ. P. Law & R. 7003 (a), on the ground that "it appear[ed] from the petition or the documents annexed thereto" that petitioner was not illegally detained. <u>Lewis v. Hunt</u>, 72 A.D.3d at 1361 (quotation omitted; alteration in original).

### D.   The Federal Habeas Corpus Proceeding

This timely habeas petition followed, in which Lewis asserts the following grounds for relief: (1) his warrantless arrest by a parole officer was in violation of the regulations of the Division of Parole, as set forth in N.Y. Exec. Law § 259-i(3)(a)(i) of the Executive Law, and Tit. 9, N.Y. Comp. R. & Regs. § 8004.2(a) (Ground One); (2) his arrest was in violation of the Fourth Amendment (Ground Two); (3) the ALJ's improper denial of the application to adjourn the parole hearing prevented Petitioner from filing a suppression motion (continuation of allegations in Ground Two); (4) the ALJ erred in finding that the parole violations were supported by a preponderance of the evidence; and (5) Petitioner was denied the right to appeal the denial of his state habeas petition.

For the reasons that follow, the petition is dismissed.

## III. Exhaustion

Respondent asserts that Petitioner's claims are unexhausted, and/or procedurally defaulted and, in any event, not cognizable on

habeas review. Because Lewis's petition may be readily dismissed on substantive grounds, the Court has exercised its discretion to bypass the exhaustion issue and deny the petition on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."); Boddie v. New York State Div. of Parole, 285 F. Supp.2d 421, 428 (S.D.N.Y. 2003) (finding that "thorny issue" of exhaustion in the context of habeas challenge to parole decision "need not be addressed" since underlying claims were clearly without merit).

## IV.  Merits of the Petition

### A. Unlawful Arrest (Ground One)

Petitioner contends that his warrantless arrest by a parole officer violated NYSDOP regulations. As Respondent argues, this claim is not cognizable on federal habeas review because it alleges, at most, a violation of state law. "There is no rule of constitutional law which requires that a warrant must be issued prior to the arrest of a parolee known to have committed a parole violation." People v. Dyla, 142 A.D.2d 423, 441 (2d Dept. 1988) ("Neither the Gagnon [ v. Scarpelli, 411 U.S. 778, 782 (1973)] nor the Morrissey [v. Brewer, 408 U.S. 471, 480 (1972)] case, which set forth the minimal due process rights of parolees and probationers in connection with revocation proceedings, holds that warrants must

in all cases be obtained prior to arrest."). Petitioner's claim that his arrest by a parole officer for a parole violation prior to obtaining a warrant is, at most, a technical violation of a procedural statute. E.g., Dyla, 142 A.D.2d at 441 ("The requirement that the arrest of a parole violator be preceded by the issuance of a warrant ([N.Y.] Executive Law §259-i(3)(a)(i)) is more in the nature of a procedural or 'housekeeping' rule than a requirement designed to protect individual liberty. The type of warrant in question is not one issued by a neutral [m]agistrate; rather, it is issued by an administrative officer who is basically a colleague of the officer who is seeking the warrant[.]") (citation omitted).

The alleged failure of the NYSDOP "to meet its own guidelines does not implicate a protected liberty interest belonging to petitioner." Longo v. Carberry, 96 Civ. 1417(RSP/DNH), 1998 WL 236177, at *3, n.5 (N.D.N.Y. May 7, 1998) (citing Dube v. State Univ. of N.Y., 900 F.2d 587, 599 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991)). Because Lewis has not alleged a violation of his federal constitutional rights, he cannot obtain habeas relief on this claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that is well settled that "federal habeas corpus relief does not lie for errors of state law.") (citations omitted).

**B.   Fourth Amendment Violation (Ground Two)**

Petitioner asserts that his arrest was unconstitutional because it was based solely on allegedly false allegations made by

-8-

Officer Sears in the criminal complaint. Respondent has construed these allegations to suggest that Petitioner believes his arrest on criminal charges was not supported by probable cause and therefore violated the Fourth Amendment.

However, the Supreme Court has squarely held that "the exclusionary rule, which generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights" does not apply in parole revocation hearings. Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 359 (1998). A parole revocation hearing is not a stage of a criminal prosecution, Gagnon v. Scarpelli, 411 U.S. at 782, and the heightened due process required during the latter do not apply to the former, Morrisey v. Brewer, 408 U.S. at 480.

Thus, even assuming Petitioner's arrest was unconstitutional, "there was no bar to the introduction of evidence resulting from any illegal searches or seizures inasmuch as the federal exclusionary rule does not apply to parole revocation hearings." Thurman v. M. Allard, 01 Civ. 8746, 2004 WL 2101911, at *19 (S.D.N.Y. Sept. 22, 2004) (citing Scott, 524 U.S. at 359, 364-65). Nor could any illegal search and seizure result in a due process violation as they have "absolutely no bearing on the process that was afforded to [Petitioner]—that is, notice, opportunity to be

heard, [and] a neutral hearing body. . . . ." <u>Thurman</u>, 2004 WL 2190911, at *19 (citing <u>Morrissey v. Brewer</u>, 408 U.S. at 489).[1]

### C.  Erroneous Denial of Request for Adjournment (Ground Two)

Petitioner contends that he was prevented from filing a motion to suppress the evidence seized as a result of the allegedly unlawful arrest due to the ALJ's improper denial of his request for an adjournment of the parole revocation hearing. This claim is without merit. The denial of the adjournment could not have prejudiced Lewis's Fourth Amendment rights as the exclusionary rule does not apply in parole revocation hearings. <u>Scott</u>, 524 U.S. at 359.

### D.  Legal Insufficiency of the Evidence (Ground Three)

Petitioner claims that the evidence submitted at the final parole revocation hearing was insufficient to sustain the parole violations by a preponderance of the evidence, in violation of Tit. 9, N.Y. Comp. R. & Regs. § 259-i(c)(vi) & § 259-i(e)(viii). Petitioner contends that ALJ relied upon the purportedly false testimony of a witness. Although Petitioner does not identify the

---

[1]

    In <u>Morrissey</u>, the Supreme Court held that the Due Process Clause requires the "parolee [be] afforded, first, a preliminary hearing at the time of arrest to determine whether there is probable cause to believe that he has violated his parole conditions, and, second, a final hearing within a reasonable time to determine whether he has, in fact, violated those conditions and whether his parole should be revoked. For each hearing the parolee is entitled to notice of the violations alleged and the evidence against him, opportunity to be heard in person and to present witnesses and documentary evidence, and the right to confront and cross-examine adverse witnesses, unless it is specifically found that the witness would thereby be exposed to a significant risk of harm." 408 U.S. at 491 (Brennan, J., concurring opn.).

perjurious witness, it appears that he is referring to Officer Fuchs, who testified that he saw Petitioner choking Officer Sears. See Pet., ¶22©. Petitioner appears to argue that Officer Fuchs's testimony was contradicted by photographs that were taken by a NYSDOP security camera located in the waiting room. According to Petitioner, the photographs demonstrate that "[Officer Fuchs] did not open the door to see petitioner choking [Officer Sears], but was standing at the door when the incident occurred." Id.

A parole revocation decision must be supported by a preponderance of the evidence. N.Y. Exec. Law § 259-i(3)(f)(viii); see also Torres v. Berbary, 340 F.3d 63, 69-71 (2d Cir. 2003).[2] "The standard for challenging the sufficiency of the evidence for a parole revocation is the same as for a criminal conviction; in both cases, the habeas petitioner 'bears a very heavy burden.'" Suce v. Taylor, 572 F. Supp. 2d 325, 340 (S.D.N.Y. 2008) (quotation omitted); see also United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000). Notably, when challenging the sufficiency of the evidence supporting a parole revocation under state law, "'to withstand judicial review, there need only be some factual basis for the Board's determination that the parolee did violate the terms and conditions of his parole.'" Suce, 572 F. Supp.2d at 340

---

[2]

As Respondent notes, the panel in Torres did not provide a clear statement of the standard of proof in parole revocation proceedings; however, it did recognize that the Supreme Court has held that the "preponderance of the evidence" standard applies in sentencing proceedings. The Second Circuit reasoned that the same "considerations" should be used in parole revocation and sentencing proceedings. Torres, 340 F.3d at 69-71.

(citing <u>McNeil v. Schubin</u>, 353 F. Supp. 166, 167 (S.D.N.Y. 1973) (citing <u>People ex rel. Ochs v. LaVallee</u>, 33 A.D.2d 80, 307 N.Y.S.2d 982 (3d Dept. 1969)(emphasis supplied)). <u>A</u> <u>fortiori</u>, on federal habeas review, the parolee's burden is that much more onerous. A habeas court must defer to the Parole Board's findings on issues of fact concerning the adequacy of evidence, as a federal court lacks the power to "substitute its own discretion of the of [Parole] Board." <u>Billiteri v. United States Bd. of Parole</u>, 541 F.2d 938, 945-46 (2d Cir. 1976)).

Here, a review of the record demonstrates that there was ample proof from which the ALJ could find by a preponderance of the evidence that Petitioner violated the conditions of his release to parole supervision by "behav[ing] in such manner as to violate the provisions of any law to which [he] [was] subject which provide for a penalty of imprisonment" and engaging in "behavior [which] threaten[ed] the safety or well-being of [him]self or others." Three eye witnesses provided testimony that Petitioner caused a disturbance in the waiting area of the NYSDOP office by yelling belligerently at a parole officer; refusing to obey the orders of Parole Officers Sears and Mata; physically assaulting Officer Sears; and struggling with Officer Fuchs and Officer Sears in order to avoid being arrested. <u>See</u> Resp't Ex. I, at pp. 8-13, 38, 40, 50-51, 68-72. Lewis did not provide any proof to controvert the officers' testimony regarding the incident at the parole office,

but simply offered the good-character testimony of his sister, who was not an eyewitness.

Lewis's arguments in state court and here merely attack the credibility determinations made by the ALJ as factfinder, which are entitled to a substantial amount of deference on habeas review. The proper weight to be accorded to the evidence and the credibility of the witnesses are determinations for the factfinder and are not grounds for reversal, even on direct appeal. Maldonando v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). This Court, sitting in habeas review, must presume that such credibility determinations were correct, 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). Lewis has not offered any evidence, much less the "clear and convincing" evidence required under Section 2254(e)(1), to rebut the presumption of correctness accorded to the ALJ's credibility determination. See Suce, 572 F. Supp. at 340; Fletcher v. Graham, 05 Civ. 1383, 2007 WL 2227505, at *6 (N.D.N.Y. July 31, 2007). As there was legally sufficient evidence to support the parole revocation decision, habeas relief is not warranted on this ground.

### E.   Denial of Right to Appeal (Ground Four)

Petitioner claims that he was denied the right to appeal the Livingston County Supreme Court's denial of his state habeas petition. See Pet., ¶22(D). However, as Petitioner concedes, appellate counsel filed a brief with the Appellate Division

challenging the propriety of the lower court's decision and subsequently filed a timely application for leave to appeal in the New York Court of Appeals.

The gravamen of Petitioner's claim appears to be not that he was denied his right to appeal, but rather that the Appellate Division erroneously denied his appeal on the merits and the New York Court Appeals declined to afford him further review. See Pet, ¶22(D) (asserting that the Appellate Division erroneously affirmed the County Court's denial of his state habeas petition based on "a case which did not have any relevancy to petitioner's [claims]," and that the New York Court of Appeals should have granted his leave application based on that court's prior rulings in similar–but unidentified–cases).

Although "this court reads pro se habeas petitions liberally, a federal habeas petition 'may be dismissed if it contains only vague or conclusory allegations.'" Rolle v. West, No. 05-CV-591(NGG), 2008 WL 3887662, at *18 (E.D.N.Y. Aug. 21, 2008) (quoting Blackledge v. Allison, 431 U.S. 63, 75 (1977)). It is well-settled that on federal habeas review, "the petitioner bears the burden of proving that his constitutional rights were violated." Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (citations omitted).

Petitioner's assertions in Ground Four do not add any new allegations of constitutional infirmities in his parole revocation

Case 1:10-cv-00796-MAT-LGF   Document 16   Filed 12/12/11   Page 15 of 15

proceeding or in the appellate process afforded him. Instead, Petitioner's claim that he was denied his right to appeal merely repackages his other contentions that the Parole Officers, the NYSDOP, and the ALJ violated his state and federal constitutional rights. As discussed above, the allegations in the Petition do not demonstrate any violation of Lewis's state law rights, much less a violation of federal constitutional magnitude. Ground Four, as it is subsumed within his other habeas claims, must be dismissed for the reasons previously stated in this Decision and Order.

## V.   Conclusion

For the foregoing reasons, Rydelle Lewis's petition is denied. The Court will not issue a certificate of appealability pursuant to 28 U .S.C. § 2253© as Lewis has not made a substantial showing of the denial of a federal right. See, e.g., Tankleff v. Senkowski, 135 F.3d 235, 241-42 (2d Cir. 1998). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the judgment would not be taken in good faith. The Clerk of the Court is requested to enter judgment denying the petition and to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     December 12, 2011
           Rochester, New York

-15-