UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

RYDELLE LEWIS,

                        Petitioner,        **No. 1:10-CV-0796(MAT)**
            -vs-                            **ORDER TO SHOW CAUSE**

DAWSON BROWN, Superintendent of
Groveland Correctional Facility,

                        Respondent.
─────────────────────────────────

I.   **Background**

        On October 4, 2010, Rydelle Lewis ("Lewis" or "Petitioner")
filed a <u>pro</u> <u>se</u> petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254, alleging that his 2007 parole revocation hearing
was constitutionally flawed. This Court issued a Decision and Order
on December 12, 2011 (Dkt # 16), dismissing the petition and
declining to grant a certificate of appealability. Judgment
(Dkt #17) was entered on December 13, 2011.

        Lewis timely filed a notice of appeal (Dkt #19) with the
United States Court of Appeals for the Second Circuit. On July 5,
2012, the Second Circuit issued an order (Dkt #23) denying Lewis'
motions for leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u> and for a certificate
of appealability because he had not made a "substantial showing of
the denial of a constitutional right." 28 U.S.C. § 2253(c).

On August 1, 2012,[1] Lewis filed a motion for leave to file a second or successive petition ("the Second Petition") with the Second Circuit, which was opened as a new case.[2] See Lewis v. Brown, 12-3115-pr (2d Cir. 2012). On September 20, 2012, the Second Circuit issued an order denying the Second Petition as "unnecessary" because the adjudication of Lewis' prior § 2254 petition (the First Petition) was not final as of the date the Second Petition was filed. See Dkt ##24, 25 (Mandate of Second Circuit in Lewis v. Brown, 12-3115-pr) (citing Whab v. United States, 408 F.3d 116, 118-19 (2d Cir. 2005)). The Second Circuit explained that Lewis' time to seek certiorari from the Supreme Court[3] with respect to his appeal from this Court's December 2011 judgment denying the prior § 2254 petition had not expired as of the date he filed the Second Petition. See Dkt ##24, 25 (Mandate of Second Circuit in Lewis v. Brown, 12-3115-pr ("Mandate")) (citing Whab, 408 F.3d at 120) ("[A]djudication [of a habeas petition] will

---

[1]

Although Lewis dated his pleading August 1, 2011, it is apparent that this was an error, given the chronology of events in this matter.

[2]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that before a second or successive habeas petition may be filed, the petitioner must move the Second Circuit for an order authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A); Whab v. United States, 408 F.3d at 118.

[3]

See Clay v. United States, 537 U.S. 522, 527 (2003).

not be final until petitioner's opportunity to seek review in the
Supreme Court has expired.")). Because the First Petition was not
"finally adjudicated", the Second Petition was not a "second or
successive" petition within the meaning of 28 U.S.C. § 2244(b).

The Second Circuit transferred the Second Petition to this
Court for "'whatever further action the district court finds
appropriate, as if it had been filed directly in the district
court.'" (Dkt ##24, 25) (Mandate) (quoting Whab, 408 F.3d at 119).[4]
However, the Second Circuit provided no indication as to what
further action might be appropriate.

## II. Characterization of the Second Petition

With regard to how this Court should treat the Second
Petition, one possibility is to consider it a motion to amend the
First Petition. However, "Whab indicates that a district court
should not entertain a motion to amend a habeas petition where the
court does not have simultaneously before it both the original
petition and the motion to amend." Williams v. United States,
Nos. 00 CR. 1008 NRB, 09 CIV. 2179 NRB, 2013 WL 239839, at *2
(S.D.N.Y. Jan. 23, 2013); see also D'Amico v. Conway, No. 04 Civ.
2253, 2008 WL 5819622, at *2 (S.D.N.Y. Oct. 30, 2008); Lynch v.
Lord, No. 01-CV-0641(VEB), 2008 WL 343085, at *5 n. 4 (W.D.N.Y.

---

[4]     See also Dkt #18 in Lewis v. Brown, 12-3115-pr (2d Cir.
Aug. 7, 2012). The Second Circuit never officially transferred the
Subsequent Petition to this Court, however.

Feb. 6, 2008); Breeden v. Ercole, No. 06 CV 3860, 2007 WL 3541184, at *1 (E.D.N.Y. Nov.14, 2007). Here, because the Second Circuit ultimately denied a certificate of appealability as to Lewis' First Petition, the two petitions will not be before this Court simultaneously. Thus, "there is no longer a [f]irst petition to amend[,]" Lynch, 2008 WL 343085, at *5 n.4. The Second Petition cannot amend a non-existent pleading.

Another possibility is to treat Lewis's Second Petition as a motion to amend or alter the judgment, FED. R. CIV. P. 59(e), or for relief from judgment, FED. R. CIV. P. 60(b). However, Lewis raises four new grounds for relief, and therefore this characterization is not appropriate. See Negron v. United States, No. 08-3233-pr, 394 F. App'x 788, 793, 2010 WL 3818099, at **4 (2d Cir. Oct. 1, 2010) ("A motion to reconsider . . . is an improper means to raise new grounds for habeas relief that could have been presented in the earlier habeas proceeding.") (citation omitted).

The only remaining possibility is to treat Lewis' Subsequent Petition, which advances four new claims, as an independent § 2254 petition. See Negron, 394 F. App'x at 794 ("Consequently, we deem Negron's May 24, 2008 motion for reconsideration[,] to the extent it advances five new claims[,] to be an *independent* section 2255 petition and not a motion to amend the earlier purported section 2255 petition.") (emphasis in original). However, treating the Second Petition as a wholly new pleading raises issues of

-4-

timeliness under AEDPA's statute of limitations, see 28 U.S.C. § 2244(d)(1). See also Hoffenberg v. United States, No. 06-3208-pr, 333 F. App'x 625, 628, 2009 WL 1740050, at **3 (2d Cir. June 19, 2009) (declining to transfer subsequent petition back to district court, pursuant to Whab; finding that "a transfer would be futile because the subsequent petition was filed eight years after Petitioner's conviction, and the petition must therefore, as a matter of law, be denied by the District Court as untimely") (citation omitted). The abuse-of-the-writ doctrine also must be considered if the subsequently filed petition raises claims that could have been raised in the initial petition. See Whab, 408 F.3d at 119 n.2 (stating that a petition might not technically be successive but "[t]raditional doctrines, such as abuse of the writ, continue to apply").

As discussed further below, the Court finds that Lewis' Second Petition constitutes an abuse of the writ, and must be dismissed on that basis. The Court accordingly has no need to reach the somewhat more complicated issue of whether the Second Petition is timely.

**III. Abuse of the Writ Doctrine**

"The rationale behind the abuse-of-the-writ doctrine is 'that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" Ching v. United States, 298 F.3d 174, 179 (2d Cir. 2002) (quoting Sanders v. United States, 373 U.S. 1, 17 (1963)). "Nothing in the traditions of habeas corpus requires

the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." <u>Sanders</u>, 373 U.S. at 18; <u>accord</u>, <u>e.g.</u>, <u>McCleskey v. Zant</u>, 499 U.S. 467, 485 (1991), <u>superceded</u> <u>in</u> <u>part</u> <u>by</u> 28 U.S.C. § 2244(b) (1996). A habeas claim that "was, or could have been, raised in an earlier petition" is generally considered an "abuse of the writ." <u>James v. Walsh</u>, 308 F.3d 162, 167 (2d Cir. 2002); <u>accord</u>, <u>e.g.</u>, <u>Hoffenberg</u>, 333 F. App'x at 629.

The Supreme Court has stated that "[w]hen a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ[,]" <u>McCleskey</u>, 499 U.S. at 495. Once abuse-of-the-writ has been raised, it becomes the petitioner's burden to excuse his failure to raise the claim earlier by showing cause for failing to raise it *and* prejudice therefrom as those concepts have been defined in the Supreme Court's procedural default decisions. 499 U.S. at 494. In the abuse-of-the-writ context, as in the procedural default context, the prejudice prong requires that the petitioner show "actual prejudice," <u>McCleskey</u>, 499 U.S. at 493, "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (discussing cause and prejudice test required for § 2255

collateral relief where error not raised at trial or on direct appeal).

Notwithstanding the general rule set forth in McCleskey, the Second Circuit subsequently held that "a district court has the power to raise sua sponte the affirmative defense of abuse of the writ[,]" because the doctrine "implicated values that transcended the concerns of the parties." Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000) (citing Femia v. United States, 47 F.3d 519, 522-23 (2d Cir. 1995) (noting McCleskey made clear that "the primary concern behind the abuse-of-writ doctrine is one of judicial economy" and "[t]he district court is at least as well positioned as the government to determine when a second or successive petition is abusive"), superseded by statute as stated in Thomas v. Superintendent/Woodbourne Corr. Fac., 136 F.3d 227 (2d Cir. 1997)).

In Lugo v. Keane, 15 F.3d 29 (2d Cir. 1994), the Second Circuit left open the question "whether, notwithstanding the general rule, there are certain instances in which a petition may be dismissed for abuse of the writ without prior notice to petitioner." Femia, 47 F.3d at 522 (§ 2255 petition) (citing Lugo, 15 F.3d at 30) (§ 2254 petition)). Femia went on to answer the question left unanswered in Lugo by holding that "the grounds for the dismissal determine whether prior notice to the petitioner is required before a district court can dismiss a habeas corpus petition sua sponte for abuse of the writ." Id. at 524; see also

_Acosta_, 221 F.3d at 124 (discussing _Lugo_ and _Femia_). Where the dismissal is based on procedural grounds (i.e., failure to show cause why the issue was not raised in an earlier petition), the district court must provide notice and an opportunity to be heard prior to dismissing the petition based on abuse of the writ. _Acosta_, 221 F.3d at 124 (citing _Femia_, 47 F.3d at 524 (citations omitted)). On the other hand, if the dismissal is based on the merits (i.e., lack of actual prejudice), no prior notice is required before dismissing the abuse-of-the-writ doctrine. _Id._ (citing _Femia_, 47 F.3d at 524) ("If the petition, when viewed in the context of all prior proceedings, reveals no actual prejudice that would entitle the petitioner to relief, even if cause could be shown, a district court may dismiss the petition _sua sponte_ under Rule 9(b) (or Rule 4(b) [of the Rules Governing § 2254 Cases]) without giving prior notice.")).

Here, Lewis' Second Petition, viewed in the context of the prior proceedings in this matter, reveals no actual prejudice that would entitle him to relief. The five grounds for relief in his Second Petition[5] all relate to the parole revocation proceeding

---

[5]     In Ground One, he asserts "factual innocence" based upon the "[d]ocumentary evidence of surveillance photos" of the location where the incident occurred. Ground Two is a contention that Lewis received inadequate written notice of the claimed parole violation. Ground Three asserts that Lewis did not have a "'neutral and detached' hearing body" to decide whether he had violated his parole conditions. Ground Four asserts that the "fact finder abused it [sic] discretion" by finding him guilty of disorderly conduct because there was insufficient evidence. Finally, Ground Five

challenged in his First Petition, and easily could have been raised in the First Petition. See Dkt #3 (Second Petition) at 8-10 in Lewis v. Brown, 12-3115-pr (2d Cir. Aug. 7, 2012). Lewis' first ground for relief purports to be a claim of "factual innocence" based upon the surveillance photos taken by security cameras located in the New York State Division of Parole waiting room. Petitioner argues, as he did in his First Petition, that these photographs would show that Officer Fuchs did not see him choking Officer Sears. This Court rejected Lewis' argument when denying his First Petition, finding that he had offered no evidence, such as the alleged surveillance photographs, to contradict the officers' testimony about what they had observed. Notably, Lewis has admitted in his Second Petition that this claim is not based upon newly discovered evidence. Thus, even if actual innocence were a stand-alone basis for habeas relief, Lewis has not come forward with anything to undermine this Court's original ruling that the prosecution clearly met its modest burden of proof at the revocation hearing.

Lewis likewise cannot show prejudice stemming from this Court's failure to consider Grounds Three and Four of the Second Petition, which simply have repackaged his assertions of evidentiary insufficiency as claims that he had a biased decision-

---

purports to set forth a claim that Lewis was "intentionally" and "arbitrarily" treated differently from other similarly situated parole violators.

maker who wrongly found him guilty. Specifically, Lewis asserts
that the administrative law judge who conducted his parole
revocation hearing was not "neutral and detached" and abused his
discretion by making credibility findings adverse to the defense
and favorable to the prosecution. These credibility-based arguments
have already been rejected by the state courts and by this Court.
Since Lewis admits that these claims are not based on newly
discovered evidence, he can offer nothing to undermine the repeated
findings by the state court and this Court that he was convicted
upon amply sufficient evidence.

No prejudice will result from this Court's failure to consider
Ground Two of the Second Petition, which asserts that Lewis did not
have adequate written notice of the claimed parole violation. The
notice of violation stated that he was charged with violating his
parole in the manner specified on the attached "violation of
release" report, which, according to Lewis, in turn referenced 9
N.Y.C.R.R. § 8003.2(h). Section 8003.2(h) provides that "[a]
releasee will not behave in such manner as to violate the
provisions of any law to which he is subject which provides for
penalty of imprisonment, nor will his behavior threaten the safety
or well-being of himself or others." N.Y. COMP. CODE R. & REGS. tit.
9, § 8003.2(h). Lewis goes on to state that "neither the
Circumstances of Custody or the Div. of Parole Bureau Analysis
report mentioned [his] being criminally arrested as it is listed on

the violation of release report." Second Petition at 8 (Dkt #3 in Lewis v. Brown, 12-3115-pr (2d Cir. Aug. 7, 2012)).

"Due process requires notice in order to give a parolee an opportunity to contest or explain matters relating to the charged offense[,]" D'Amato v. United States Parole Comm'n, 837 F.2d 72, 77 (2d Cir. 1988) (citation omitted), but "failure to provide written notice, by itself, is insufficient to justify habeas relief[.]" id. Rather, the parolee must affirmatively demonstrate prejudice flowing from the asserted procedural deficiency. Id. (citation omitted). Here, Lewis plainly is unable to show any prejudice whatsoever because the claim is factually and legally baseless. The Court has reviewed the four-page Notice of Violation, see Exhibit D to Dkt #9-2, and it sets out at length the events giving rise to the charges against Lewis. The contents of the so-called "Circumstances of Custody" and the Division of Parole Bureau Analysis report (Dkt #9-2, Ex. E), are immaterial to whether Lewis was afford sufficient notice of the alleged parole violation to comply with procedural due process.

Finally, Lewis cannot demonstrate prejudice from this Court's dismissal sua sponte of Ground Five, which asserts that his rights under the equal protection clause[6] were violated. According to

---

[6]
The Fourteenth Amendment's equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

Lewis, he was treated "differently from other parole violators similarly situated who has [sic] not violated the conditions defined in 9 NYCRR 8002.6(c)(1)[7] by arbitrarily and capriciously changing [his] re-release date continuously . . . without ever informing [him] of the condition(s) violated under 9 NYCRR 8002.6(c)(1)." Second Petition at 10 (Dkt #3 in <u>Lewis v. Brown</u>, 12-3115-pr (2d Cir. Aug. 7, 2012)).

Although Lewis frames this argument as a violation of the equal protection clause, the gravamen of his claim is that he allegedly was not informed of the conditions, enumerated in N.Y. COMP. CODE R. & REGS. tit. 9, 8002.6(c)(1), that precluded him from being released as soon as practicable after completing his delinquent time assessment. The question of whether to re-release an inmate to parole supervision is squarely within the parole board's discretion, and no procedural due process concerns are implicated by § 8002.6. "[S]ection 8002.6(c) does not create a

---

[7]     Section 8002.6(c) provides that "[a]ll parole violators identified as eligible for re-release as defined by subdivision (a) of this section, will be re-released to parole supervision as soon as practicable after completion of the delinquent time assessment imposed irrespective of whether they are in State or local custody." N.Y. COMP. CODE R. & REGS. tit. 9, § 8002.6(c)(1).  However, if the board of parole is presented with certain circumstances, e.g.,  the parole violator has engaged in behavior constituting a violation of facility rules, or the board receives any information reasonably showing that the parole violator may not be suitable for re-release, the board of parole will consider the violator's case anew and may require a personal interview with the violator. <u>See</u> N.Y. COMP. CODE R. & REGS. tit. 9, § 8002.6(c), (d).

liberty interest in conditional parole re-release because parole re-release, as with parole release, is subject to the Parole Board's discretion." Loria v. Butera, No. 5:09-CV-531 (FJS/ATB), 2010 WL 3909884, at *5 (N.D.N.Y. Sept. 29, 2010) (citing N.Y. COMP. CODES R. & REGS. tit. 9, § 8002.6(f) ("This section shall not be construed to afford any parole violator a right to release from custody upon expiration of the time assessment, but only a right to consideration by the [Parole Board] as soon as practicable."); N.Y. EXEC. LAW § 259-i(3)(f)(x) ("Where a date has been fixed for the violator's re-release on presumptive release, parole or conditional release, as the case may be, . . . the board shall retain the authority to suspend the date fixed for re-release and to require a personal interview based on the violator's institutional record or on such other basis as is authorized by the rules and regulations of the board. . . .")). Because Lewis had no liberty interest in re-release to parole, he has not presented a cognizable constitutional claim that he was deprived procedural due process protections such as notice and an opportunity to be heard. Accord Cofield v. Lempke, No. 10-CV-0284(MAT), 2011 WL 2881951, at *5 (W.D.N.Y. July 15, 2011) (citations omitted); Loria, 2010 WL 3909884, at *4 (citing Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (holding that the New York State parole process creates no legitimate expectation of release; and, therefore, an inmate

seeking release is not afforded the full panoply of procedural due process protection)).

In sum, Lewis' Second Petition constitutes an abuse of the writ because all of the claims raised therein either duplicate claims previously raised in the First Petition or amount to claims that could have been raised in the First Petition. Dismissal of the Second Petition <u>sua</u> <u>sponte</u> under the abuse-of-the-writ doctrine is warranted because none of the Second Petition's claims could result in the granting of habeas relief, and thus no actual prejudice will inure to Lewis. <u>See</u> <u>Femia</u>, 47 F.3d at 526 ("In these circumstances, [where the petitioner's newly raised claims are meritless or non-cognizable,] the lack of any actual prejudice of the sort referred to in <u>Frady</u> and <u>McCleskey</u> is beyond question. Since lack of actual prejudice supplies a fully adequate basis for the district court's <u>sua</u> <u>sponte</u> dismissal of the petition under § 2255, prior notice to petitioner was not required.").

## V.    Conclusion

For the foregoing reasons, Rydelle Lewis' Second Petition is dismissed with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal <u>in</u>

-14-

forma pauperis. The Clerk of the Court is requested to close this

case.

    **SO ORDERED**.


                                            **S/Michael A. Telesca**

             _____
                            MICHAEL A. TELESCA
                     United States District Judge
DATED:     May 20, 2013
           Rochester, New York